554 So.2d 720 (1989)
STATE of Louisiana, Appellee,
v.
Fred DRIGGERS, Appellant.
No. 21,249-KW.
Court of Appeal of Louisiana, Second Circuit.
December 6, 1989.
*721 McKeithen, Thurman & McKeithen, Monroe, for appellant.
William J. Guste, Jr., Atty. Gen., Baton Rouge, William R. Coenen, Dist. Atty., Rayville, E. Rudolph McIntyre, Jr., Asst. Dist. Atty., Winnsboro, for appellee.
Before HALL, MARVIN and SEXTON, JJ.
SEXTON, Judge.
We granted defendant's writ application in order to review the district court's denial of his motion to suppress other crimes evidence at his trial on multiple counts of indecent behavior with a juvenile in violation of LSA-R.S. 14:81 and multiple counts of aggravated oral sexual battery in violation of LSA-R.S. 14:43.4. For reasons which will be considered more fully below, we affirm the district court's ruling and recall the writ.

FACTS
Defendant was indicted by a parish grand jury on four counts of indecent behavior with a juvenile and two counts of aggravated oral sexual battery, all involving his granddaughter, J.D., aged six at the times the offenses are alleged to have occurred.
After defendant's indictment, the state filed several notices of intent to use evidence of other crimes in accordance with State v. Prieur, 277 So.2d 126 (La.1973), which it alleged defendant committed with other female juveniles several years prior to the instant charges. The state's express purpose for introducing evidence of other *722 crimes was, among many others, to show the lustful disposition of the defendant, to show defendant's pattern and mode of operation while molesting young female victims like J.D., to show that the crimes with which defendant is charged are part of a system of past deviant behavior with young female victims, and to refute defendant's claim that the offenses with which he is charged occurred with innocent intent or were inadvertent, accidental, unintentional, or without guilty knowledge.
Defendant filed a motion to suppress this evidence alleging the irrelevancy of the evidence and contending that the probative value of the evidence was greatly outweighed by the prejudicial effect which it would have on defendant's case. Thereafter, a hearing was held wherein the state introduced the testimony of five witnesses who related sexual encounters which they had with the defendant when they were juveniles and one witness who recounted a similar experience which her daughter had with the defendant.
The defendant's niece, A.C., now 23 years old, testified that when she was four or five years old she had visited the defendant at his house near the local high school. She testified that while she and defendant were in the back yard, he grabbed her hand and put it in his overalls to make her touch his penis. In another instance, she was in a car with him when he exposed his penis and asked her to kiss it. He tried to force her to do this by grabbing the back of her head, but did not succeed. He warned her not to tell anyone about the incident because she would not be believed. One night, while she and her sister were visiting the defendant and his wife, the children slept in the adult's bed so that the aunt could take care of an ill sister. She testified that while they were in bed, the defendant fondled her and inserted his finger into her vagina. She testified that he also rubbed her while they were playing together on various occasions, almost every time she visited. The defendant has not engaged in any deviant behavior with her since the time that she was four or five years old.
B.C. testified that in 1963, when she was nine years old, she and her family lived next door to the defendant's family and shared a common backyard. Her father and the defendant worked together. One day while she was in the backyard alone with the defendant, he came up from behind and hugged her. He put his hand in her underwear and fondled her vagina.
V.E., now 26, testified that she was also a next-door neighbor to the defendant when she was about nine years old. Her father and the defendant also worked together. On two occasions while she and the defendant were in his bedroom, he looked at pornographic magazines while he fondled her and masturbated. On another occasion, she and the defendant were in a barn behind their houses and he pulled her clothes down and rubbed his penis on her. On yet another occasion, her family and the defendant's family had been visiting friends and were returning in the car in which the defendant, his wife, her mother, her father, her brother, the defendant's two sons, and the witness were riding. On this return trip, he made her rub his penis with her hand.
L.T., who is now 20 years old, testified that when she was 12 or 13, she and the defendant's daughter were friends. On one occasion, she had gone to visit his daughter and discovered that the daughter was out of town. Defendant asked her in for a drink of water. Once she was in the house, defendant put his hand into her underwear to fondle her vagina. On other occasions, defendant took her pants off to fondle her vagina and he also fondled her breasts. He asked her to play with his penis, but she refused. She said that on other occasions he got on her horse with her and made her ride to a secluded place where he fondled her breasts. This activity occurred four or five times. She further testified that she went with him one time to a chicken shed and he touched her breasts. He warned her not to tell anyone because she would get into trouble.
M.S. testified that she is now 36 years old and that when she was 10 or 12 years old (or around 1963), when she was a neighbor *723 of the defendant, she went to the defendant's house to use his telephone. He grabbed her leg and asked her when she would "let" him in her pants. She replied "never" and attempted to use the phone. He then grabbed her from behind and tried to hug her. He attempted to make her turn around so that he could kiss her, but she ran out the back door.
A.C.D. is the defendant's sister-in-law. She testified that in 1967, her daughter, then age 12, reported that the defendant had put his hands down her pants to touch her vagina. The witness and her stepfather confronted the defendant and the defendant said he would never do it again.

OTHER CRIMES EVIDENCE
In brief defendant argues that the state has no purpose for introducing the other crimes evidence other than to portray him in an unfavorable light, thus improving the chances of winning a conviction. The state sets forth a number of reasons in support of admitting the other crimes evidence, some of which we will consider below.
Other crimes evidence is generally not admissible unless the evidence has independent relevancy other than to show a criminal disposition on the part of the defendant. LSA-C.E. Art. 404 B; LSA-R.S. 15:445-446 (repealed); State v. Cupit, 508 So.2d 996 (La.App. 2d Cir.1987), writ denied, 514 So.2d 1174 (La.1987). Even where such evidence has an independent relevancy, its probative value must outweigh its prejudicial effect and other safeguards must be met. State v. Hamilton, 478 So.2d 123 (La.1985), cert. denied, 478 U.S. 1022, 106 S.Ct. 3339, 92 L.Ed.2d 743 (1986).
The purpose behind excluding other crimes evidence is to insure that the defendant will not be presumed to be guilty of the instant charge because of past offenses, State v. McGuffey, 486 So.2d 1101 (La.App. 2d Cir.1986), or because he is of a general criminal character. State v. Carlisle, 458 So.2d 1347 (La.App. 2d Cir.1984), writ denied, 463 So.2d 1316 (La.1985).
However, there are statutory and jurisprudential exceptions to this exclusionary rule
(1) when the evidence of other acts tends to prove a material fact genuinely at issue,
(2) when the evidence of other acts has independent relevance other than showing that the defendant is a man of bad character, and
(3) when the probative value of such evidence outweighs its prejudicial effect.
State v. Thompson, 532 So.2d 1160, 1663 (La.1988). Below, we will consider these guidelines in light of the record before us.
(1) Material Fact Genuinely at Issue
Under LSA-R.S. 14:81, indecent behavior with juveniles, the state will be required to prove that defendant is over the age of seventeen that he committed any lewd or lascivious act upon the person of his granddaughter, that his granddaughter is under the age of seventeen, that there is an age difference of greater than two years between the defendant and his granddaughter, and that he had intention of arousing or gratifying his own sexual desires or that of his granddaughter.
Under LSA-R.S. 14:43.4, the state will be required to prove that the defendant intentionally touched the anus or genitals of his granddaughter with his mouth or tongue or had his granddaughter touch his anus or genitals with her mouth or tongue, that the victim is not his spouse, and that he either compelled her to submit by placing her in fear of receiving bodily harm or that she is under the age of fifteen and at least three years younger than him.
In order that the offense be considered aggravated under LSA-R.S. 14:43.4, the state would be required to prove not only these factors, but also that the granddaughter resisted the act to the utmost, but her resistance was overcome by force, that the granddaughter was prevented from resisting the act by threats of great and immediate bodily harm, accompanied by apparent power of execution, or that she was prevented from resisting the act because defendant was armed with a dangerous weapon, or that she was under the age of twelve years at the time of the alleged offenses, or that defendant was assisted by *724 another in the perpetration of the offense without the consent of his granddaughter.
Given that defendant claimed that the acts were unintentional or accidental, material issues in the instant case will be defendant's specific intent to commit indecent behavior with his granddaughter and his general criminal intent to commit the offense of oral sexual battery.
The instant factual scenario differs from the situation generally encountered when other crimes evidence is considered in the context of a sex-related offense. While most of the jurisprudence arises in the situation where the defendant has had prior contacts with the same victim, we are concerned here with other crime evidence involving other victims. Below, we will consider those cases which are factually similar to the instant case.
In State v. Cupit, 189 La. 509, 179 So. 837 (1938), defendant was convicted on a charge of assault with intent to commit rape. The evidence indicated that defendant went to his sister's home and asked her daughter, defendant's niece, about her mother's whereabouts. The niece was apparently alone at the time and, upon ascertaining this fact, defendant left, but returned sometime later, announcing that he was going to sleep with his niece. Although the niece initially evaded defendant's advances, defendant announced that he was going to pursue the girl. She then ran out of the house and sought assistance elsewhere.
At defendant's trial, the state introduced evidence that the defendant had, some years before this attempt on his niece, been arrested and charged with having raped another of his nieces.
The Louisiana Supreme Court found that the evidence was admissible to show defendant's intent in committing the particular act with which he was charged in the case under review. The prior offenses, if they were accepted by the jury as having been committed, clearly tended to show the lustful disposition the defendant bore toward his nieces, all being children of tender age, and his unnatural desire to have sexual intercourse with them.
In State v. Howard, 520 So.2d 1150 (La. App. 3rd Cir.1987), writ denied, 526 So.2d 790 (La.1988), defendant was convicted of aggravated rape for having had sexual intercourse with his 11-year-old daughter. Prior to trial, the state filed notice of its intent to use evidence of other crimes, particularly that his stepdaughter, then 20 years old, would testify that she was sexually abused by him when she was about the age of the present victim. At trial, the trial court advised the jurors before the testimony to consider it "only for the purpose to prove system, pattern or intent."
Noting that specific intent is not an essential element of aggravated rape, the court ruled that the evidence of previous sexual assaults against the stepdaughter at a period of time analogous to the current victim's (preteen years) and under similar circumstances (defendant was intoxicated and alone with the victim when others were either away or asleep) demonstrated motive and a plan to systematically engage in non-conssensual sexual relations with his daughters as they matured physically and was admissible to establish general intent or motive. Additionally, the court held that the testimony in question was introduced to corroborate the assertions by the prosecutrix. Finally, although the sexual assaults about which the elder daughter testified occurred several years prior to the testimony, the court held that the passage of time should go to the weight rather than the admissibility of the testimony.
In the instant case, the other crimes evidence would tend to demonstrate that defendant generally took advantage of one-on-one situations with female juveniles, that he was motivated by an unnatural interest in pre-pubescent and adolescent females, and that the facts giving rise to the instant charges did not occur fortuitously or accidentally, but were fully intended by the defendant. Our law permits the introduction of other crimes evidence for these purposes.
(2) Relevance
Defendant argues that the state intends to introduce the evidence solely to portray *725 him as a man of criminal character and to buttress a weak case against him. The state argues numerous bases for the admissibility of the evidence, two of which will be considered in more detail below.
(a) Intent and Guilty Knowledge
Defendant contends that intent is not at issue because he does not claim that the alleged conduct was accidental, only that it never occurred. The state asserts that defendant's argument is disingenuous in light of a statement which he made during the investigation of the matter that suggests that the conduct in question may have occurred inadvertently.
When intent is an issue, other acts become relevant to show by similar offenses that the act for which the defendant is on trial was not inadvertent, accidental, unintentional, or without guilty knowledge. For this reason, the court does not generally require any feature of common purpose or general scheme. The other acts must be similar, but need not be part of a scheme. Notably, the requirement of a "signature crime" has been most commonly imposed in cases where identity, not intent, was the issue. State v. Smith, 513 So.2d 438 (La. App. 2d Cir.1987), and cases cited therein.
Intent may be proved by evidence of acts or conduct that tends to establish the fact of intent. State v. Smith, supra. If the defendant has committed similar criminal activity in the past, this shows a willfulness on his part to commit these same crimes today, thereby reducing the possibility that the crime in question was committed through ignorance, was unintentional, or was with innocent intent or without guilty knowledge. State v. Talbert, 416 So.2d 97 (La.1982); State v. McDermitt, 406 So.2d 195 (La.1981); State v. Thompson, supra.
Although the state must prove specific intent in order to convict defendant of indecent behavior with juveniles, State v. Ruple, 426 So.2d 249 (La.App. 1st Cir.1983); see generally State v. Schenck, 513 So.2d 1159 (La.1987), the statute defining aggravated oral sexual battery clearly requires only general intent. See and compare LSA-R.S. 14:81 with LSA-R.S. 14:43.3 and 43.4. While our research does not disclose any cases which stand for the proposition that aggravated oral sexual battery is only a general intent crime, the statute obviously requires only that the act occur and does not require that the offender desire prescribed criminal consequences. Cf. State v. Michel, 225 La. 1040, 74 So.2d 207 (1954), affirmed, 350 U.S. 91, 76 S.Ct. 158, 100 L.Ed. 83 (1955), where the Supreme Court held the crime of aggravated rape to be only a general intent crime.
If specific intent is an issue, other crime evidence is admissible. State v. Prieur, supra. However, even if specific intent is not at issue, defendant's general criminal intent is at issue because of his statement to the investigating officer that if the event did occur it was accidental. See State v. Humphrey, 412 So.2d 507 (La.1982), on appeal after remand, 445 So.2d 1155 (La. 1984), for our supreme court's discussion of other crimes evidence where specific intent is not at issue.
Thus, the other crimes evidence at issue is relevant to show that the incidents giving rise to the charges against the defendant did not occur by accident, but were intended by him.
(b) Motive
Another basis upon which the state seeks to introduce the evidence in question is to demonstrate that the defendant was motivated by a desire for abnormal sexual gratification with young female victims. Motive is the cause or reason that moves the will and induces action for a definite result. State v. Abercrombie, 375 So.2d 1170 (La.1979).
In the attempted homicide prosecution of State v. Brown, 398 So.2d 1381 (La.1981), the defendant complained that the fact he was driving a stolen automobile at the time of the offense was inadmissible as evidence of another crime. The state argued that this evidence was necessary to show that the defendant had a motive for shooting the police officer who had pulled him over for speeding. The court agreed, finding that the fact that the defendant denied firing the gun at the officer created a genuine *726 issue of whether he had indeed done so and put the state in a position of having to establish a motive for defendant shooting a policeman merely for pulling him over on a routine stop.
In the instant case, we believe the other crimes evidence is relevant to show defendant's motive for committing the acts alleged. Evidence that defendant has, over a substantial period of time, engaged in pedophilic activities would tend to establish a motive for his having committed the instant offenses, especially in light of his having alternatively denied the acts ever occurred and claimed that they may have occurred accidentally. See State v. Cupit, 189 La. 509, 179 So. 837 (1938), wherein one factor in support of the admissibility of the evidence was that the evidence tended to show the "lustful disposition" the defendant bore toward his young female relatives, and State v. Howard, supra, wherein the defendant was motivated to "engage in non-consensual [sexual] relations with his daughters as they matured physically."
(3) Probative Value Versus Prejudicial Effect
Finally, defendant contends that any probative value would be outweighed by prejudice, especially when one considers that some of the alleged events in question occurred over twenty years prior to the instant charges being brought. The state focuses instead on the necessity of the other crimes evidence to corroborate the testimony of the very young victim.
If admitted, this evidence will be relevant to show, contrary to defendant's attempted exculpatory statement, that the facts giving rise to the instant charges were neither unintended nor accidental. Defendant's motive would also be disclosed: a seemingly uncontrollable desire to partake in pedophilic sexual activities with young and developing female juveniles. Finally, defendant's means of accomplishing these activities on past occasions bear substantial resemblance to each other and with the present offenses.
At the same time, defendant will have the burden of defending, denying, or explaining incidents which occurred many years ago. The burden of defending such charges will be substantial, especially in light of the number of witnesses who have come forward to recount instances of defendant's aberrant behavior.
However, each of the witnesses testified in significant detail and with such clarity that defendant has been provided with all of the particulars necessary to make out his defense. The evidence of each offense is relatively simple and distinct, allowing the factfinder to easily distinguish the other crimes offenses from the crimes charged. Cf. State v. Celestine, 452 So.2d 676 (La.1984), wherein the same principle was applied in the context of joinder of two counts of aggravated rape. Celestine also approved the use of appropriate jury instructions to caution the jury regarding the purpose of introducing such evidence. The same type of cautionary instructions can be used, if requested by the defendant, to reduce prejudice in the instant case. State v. Prieur, supra at 130.
The jury should have no trouble compartmentalizing and separating the evidence of the instant offenses from the prior crimes evidence and applying the law intelligently to each offense so that the defendant will not be unfairly convicted on the basis of prejudice or confusion instead of on the evidence of his conduct with his granddaughter. State v. Holstead, 354 So.2d 493 (La.1977).
The other crimes evidence will no doubt be prejudicial; all evidence which tends to make it more probable than not that an individual committed a criminal offense is necessarily prejudicial. However, we conclude that the probative value outweighs the prejudice defendant may experience as a result of having to defend against the evidence.
Finally, we must consider defendant's argument that the other crimes evidence involves alleged acts which occurred so long ago that his ability to defend against them is in doubt. Prior Louisiana jurisprudence generally dismissed such a complaint as a matter which should more appropriately go to the weight of the evidence rather than *727 the admissibility. See State v. Howard, supra, and cases cited therein. In our opinion, however, defendant raises an issue which, under the circumstances, should not be dismissed in such a cavalier manner.
Based upon the record before us, defendant will be required to defend claims of other crimes which occurred from seven to 26 years before the instant charges were brought. Two of the other crimes victims testified regarding incidents which occurred between seven and eight years ago, one was approximately 19 years before, and three allegedly occurred between 24 and 28 years before.
Even though the other crimes evidence may appear to be remote in time in some instances, the incidents are all within the same time period in terms of the victims' lives because all of the victims were essentially pre-pubescent: most of them were below the age of 12, which would aggravate the charges against the defendant.
Additionally, the continuity and consistency with which the other crimes occurred indicate a pattern of behavior and not merely one or two isolated incidents. The significance of the other crimes lies as much in what motivates defendant to act as in what occurred. His apparent tendency to partake in pedophilic activities is of long standing and appears to be firmly entrenched.
Finally, all of the victims of the alleged other crimes were relatives and neighbors of the defendant, something which, in addition to contributing to the pattern of defendant's conduct, makes it less onerous for defendant to defend because he knows all of the victims well.
In summary, although the other crimes evidence which the state seeks to introduce against the defendant involves incidents which could not be characterized as recent, we hold that, under the peculiar circumstances of this case, the mere passage of time, without more, does not require their exclusion. Other cases involving the same or similar circumstances should be left to the reasonable discretion of district courts when those cases arise.

CONCLUSION
For the above and foregoing reasons, we conclude that the other crimes evidence sought to be introduced by the state at defendant's trial on charges of indecent behavior with a juvenile and aggravated oral sexual battery is admissible.
Accordingly, the ruling of the district court in this matter is affirmed and the writ is recalled.
AFFIRMED.