806 So.2d 59 (2001)
STATE of Louisiana
v.
Joseph MILLS.
No. 2000-KA-2525.
Court of Appeal of Louisiana, Fourth Circuit.
December 27, 2001.
*60 Harry F. Connick, District Attorney, Scott Peebles, Assistant District Attorney, New Orleans, LA, Counsel for Plaintiff/Appellee.
Laura Pavy, Louisiana Appellate Project, New Orleans, LA, Counsel for Defendant/Appellant.
Court composed of Judge CHARLES R. JONES, Judge JAMES F. McKAY III, Judge DAVID S. GORBATY.
DAVID S. GORBATY, Judge.
This case involves the crime of aggravated oral sexual battery allegedly committed against the defendant's stepson. This court is greatly disturbed by the facts of the case, but must apply the law as interpreted by our Supreme Court. In this appeal, defendant Joseph Mills claims that the trial court improperly allowed introduction of evidence of other crimes at his trial. He also appeals his sentence claiming that it is constitutionally excessive. For the following reasons, we reverse the conviction, and remand this matter to the trial court for further proceedings.

STATEMENT OF CASE:
Joseph Mills was charged by bill of information with one count of forcible rape, a violation of La.Rev.Stat. 14:42.1, and two counts of aggravated oral sexual battery, violations of La.Rev.Stat. 14:43.4. On November 1 and 15, 1999, Prieur hearings were held, after which the trial court ruled that the State would be allowed to introduce at trial evidence of certain prior crimes. Pursuant to a defense motion to sever, one of the aggravated sexual battery charges was severed and tried separately. On January 4, 2000, a six-person jury found Mills guilty as charged of aggravated oral sexual battery. The State subsequently filed a multiple bill to which Mills pleaded not guilty. Following a hearing, Mills was adjudicated a second felony offender, and was sentenced to forty years at hard labor without the benefit of parole, probation or suspension of sentence, with credit for time served. Mills' oral motion for appeal was granted.

STATEMENT OF FACT:
C.M.[1], the mother of the victim and, at the time of trial, the defendant's wife, testified that one morning her son, F.B., a child from a previous relationship, told her that he needed to talk to her. He told her "mama I woke up, and Mr. Joey was sucking my penis." After hearing this, C.M. paged Mills, who returned home. C.M. then asked her son to tell Mills what he had told her. F.B. repeated what he had said to his mother, and was questioned by Mills. Specifically, Mills asked F.B., "Well, you're sure it wasn't the dog?" C.M. further testified that her son *61 became scared and said, "Lets just forget it." The incident was not reported to the police immediately, however, once reported, the Office of Community Services became involved. C.M. and F.B. visited Dr. Janzen at the request of Community Services. The doctor interviewed them together and he interviewed F.B. separately. C.M. was unable to remember the exact date the incident occurred, but she did recall that it took place during the 1996/1997 school year. At the time of trial C.M. was suing Mills for divorce and for civil damages related to the incident with F.B.
Detective Richard Mungia, of the New Orleans Police Department, testified that on January 10, 1999, he conducted a telephone interview with the victim, who was living in Connecticut with his father. As a result of the interview, the detective re-booked Mills who was already in custody for a separate incident.
L.D., Mills' stepdaughter from a previous marriage, testified that when she was five or six years old Mills made her "touch his penis," and recalled "him putting his penis in my mouth."
R.M., Mills' daughter from a previous marriage, and the half-sister of L.D., testified that when she was five or six years old her father had her touch his penis.
F.B. testified that at the time of trial he was twelve years old, and was living with his father in Connecticut. He further testified that one night when he was sleeping "Mr. Joey came into my room, and started sucking my thing." He said that he told his mother about the incident, but when Mills questioned him, he denied that it happened because he did not want to get Mills in trouble. F.B. recalled being interviewed about the incident by a couple of police officers and a doctor, but did not remember the doctor's name. F.B. further testified that he understood the difference between telling the truth and telling a lie, and that he was telling the truth that the incident actually occurred.

ERRORS PATENT:
A review of the record reveals no errors patent.

DISCUSSION:

ASSIGNMENT OF ERROR NUMBER 1:
In his first assignment of error, Mills complains that the trial court erred in admitting other crimes evidence. Specifically, he argues that the State in its Prieur notice submitted that the other crimes evidence was admissible to prove knowledge, opportunity, intent, plan or motive. However, the trial court held it was admissible to establish Mills' lustful disposition towards young children. Mills further argues that even under this jurisprudential exception, the evidence fails to meet one of the enumerated exceptions of La.Code Evid. art. 404(B)(1) for the admissibility of other crimes.
La.Code Evid. art. 404(B)(1) provides:
Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.
*62 To properly admit evidence of other crimes, the State must first show that the element the evidence tends to prove is truly at issue. State v. Jackson, 625 So.2d 146 (La.1993). Second, the State is required to prove by clear and convincing evidence that the defendant committed these other acts. State v. Davis, 449 So.2d 466 (La.1984). Third, the evidence may be excluded if its probative value is substantially outweighed by the dangers of unfair prejudice, confusion of the issues, or misleading the jury, or by consideration of undue delay, or waste of time. La.Code Evid. art. 403. Finally, the defendant must be given notice and afforded a hearing at which the State must show that the evidence is neither repetitive nor cumulative, and is not being introduced merely to show that the defendant is of bad character. In addition, at the request of the defendant, the court must give an instruction to the jury at the time the evidence is introduced and again at the close of the trial, that the other crimes evidence serves a limited purpose and that the defendant cannot be convicted for any crime other than the one charged or a responsive offense.
Following a Prieur hearing, the trial court found that the evidence of Mills' prior two convictions for molestation of a juvenile, and aggravated crime against nature, in which the victim was also a juvenile, tended to prove Mills' lustful disposition towards young children, and deemed the evidence admissible. At no time did the State argue why the other crimes evidence should be allowed. Other than the boilerplate language contained in the State's motion, the prosecutor merely stated that the evidence would prove opportunity or a "pattern of intent." Specifically, the State argued that in each of the incidents Mills had the children under his care, custody and control. However, the evidence in the instant case indicates that F.B. was not home alone with Mills at the time of the incident. Rather, F.B.'s mother was down the hall in the bedroom she shared with Mills.
Our Supreme Court recently addressed the jurisprudentially created "lustful disposition" exception to La.Code Evid. art. 404(B). In State v. Kennedy, XXXX-XXXX (La.4/3/01), 803 So.2d 916, the defendant was charged with the rape of a child under the age of twelve. The State sought to introduce evidence of the defendant's unadjudicated rape of another young girl allegedly committed sixteen years earlier. The alleged victim of the earlier crime testified at the Prieur hearing. The trial court found the testimony admissible, noting that State v. Miller, 98-0301 (La.9/9/98), 718 So.2d 960, held that "lustful disposition" evidence may be relevant to prove the element of specific intent. The Court of Appeal, Fifth Circuit, granted the defendant's writ application, and reversed the trial court, stating that "[e]vidence of `lustful disposition' is not admissible unless it is to prove some element of the charged offense, like specific intent. (citation omitted) Since specific intent is not at issue in this case, the evidence is not admissible to prove the Defendant's bad character, which is prohibited." The Supreme Court granted the State's writ application[2], and affirmed the ruling of the Fifth Circuit.
The Court explained that the "lustful disposition" exception to Article 404 B was recognized in our jurisprudence as early as 1903, when it was accepted that evidence of prior sex crimes against the prosecuting victim is admissible under an exception to the general rule excluding evidence of other crimes similar to the charged offense. *63 The evidence of other acts against the same victim tended to prove the defendant had a lustful disposition toward that person.[3] The Court, however, noted that the exception has been consistently restricted to evidence of other crimes against the same victim, whether child or adult. Kennedy, supra at 919.
The Court further explained that in State v. Jackson, 625 So.2d 146 (La.1993), and State v. Miller, supra, the Court sanctioned on a limited basis, the introduction of evidence of improper sexual conduct with persons other than the victim in the charged offense in cases of child sexual abuse, but clearly within the constraints of La.Code Evid. art. 404(B) and the balancing test of Article 403. Specifically, in Jackson, supra, the Court noted "where the element of intent is regarded as an essential ingredient of the crime charged, it is proper to admit proof of similar but disconnected crimes to show intent with which the act charged was committed." 625 So.2d at 150 (quoting State v. Cupit, 189 La. 509, 179 So. 837, 839 (1938)). Thus, the other crimes evidence was deemed admissible to negate any defense that the defendant acted without intent or that the act was accidental.
Similarly, in Miller, supra, evidence of lascivious statements made previously by the defendant to a young neighbor girl was admitted to show the defendant's lustful disposition towards his young granddaughters and, thus his specific intent to molest them sexually. Miller, supra at 98-0301, p. 13, 718 So.2d 960.
Thus, both in Jackson and Miller, the Court deemed the other crimes evidence admissible because it was relevant to the issue of specific intent, a key ingredient of the crimes charged.
To the contrary, the Court in Kennedy pointed out that aggravated rape is a general intent crime, and, as such, the criminal intent necessary to sustain a conviction is established by the very doing of the act. General intent exists "when the circumstances indicate that the offender, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act." La.Rev.Stat. 14:10(2). Therefore, absent a dispute as to whether the accused intended to commit the crime, for example, claiming that the act was inadvertent or accidental, evidence of other crimes is prohibited to show intent when the crime charged is a general intent crime.
Mills was charged with a violation of La.Rev.Stat. 14:43.4 for allegedly committing an aggravated oral sexual battery on a child under the age of twelve. La. Rev.Stat. 14:43.4 defines aggravated oral sexual battery as "an oral sexual battery committed when the intentional touching of the genitals or anus of one person and the mouth or tongue of another is deemed to be without the lawful consent of the victim because it is committed under any one or more of the following circumstances:... (4) When the victim is under the age of twelve years ..." The State argues that because "intentional touching" is part of the definition of the crime, the crime is, therefore, a specific intent crime. The State also argues here, as it did in Kennedy, that in State v. Driggers, 554 So.2d 720, 723 (La.App. 2 Cir. 1989), the Supreme Court allowed other crimes evidence to be admitted in the prosecution of a charge of aggravated oral sexual battery.
First, we disagree with the State's conclusion that aggravated oral sexual battery is a specific intent crime. In Kennedy, *64 referring to the Driggers case, the Court specifically stated that aggravated oral sexual battery is a general intent crime. Kennedy, supra at 921.
Second, we find the State's reliance on Driggers misplaced, as did the Supreme Court in Kennedy. The Court explained very clearly that the admission of other crimes evidence was proper in Driggers because the defendant had placed his "general intent" at issue by claiming to the police that the charged act, if it did occur, was accidental. The other crimes evidence, therefore, tended to show that the charged acts did not occur by accident, but were intended to occur. Kennedy, supra at 923-924, citing Driggers, 554 So.2d at 725. The Court in Kennedy agreed that on the facts of that case, "the evidence of similar offenses may be relevant to show that `the act for which the defendant is on trial was not inadvertent, accidental, unintentional, or without guilty knowledge.'"
In the instant case, however, Mills has denied the charge. He has not suggested as the Court stated in Kennedy, that the victim's penis accidentally found its way into his mouth. The trial testimony reveals that Mills suggested to his young victim that perhaps "the dog did it," or that the victim dreamed the entire episode, but at no time did Mills claim that the alleged act was an accident, or that he did commit the act, but did so without lascivious intent.
Justice Traylor, dissenting in Kennedy, reasons that mechanical application of La. Code Evid. art. 404(B) creates an anomaly in restricting application of the lustful disposition exception to specific intent crimes. Specifically, "with a bright line rule of specific intent as the requirement for admissibility in child sexual assault cases, other crimes evidence becomes admissible in attempted aggravated rape, or charges of molestation of a juvenile, but cannot be offered in the more grievious [sic] crime of aggravated rape of a child under 12." As such, if one only attempts to rape a child, one can have evidence of prior crimes used against him, but, if one succeeds in raping the child, the same evidence cannot be admitted.
We find this case particularly disturbing and reverse the conviction with great trepidation. We agree with Justice Traylor's reasoning without reservation, but are nonetheless bound by the majority opinion in Kennedy. Accordingly, we reverse Mills' conviction and remand this matter to the trial court for further proceedings.[4]
REVERSED AND REMANDED.
NOTES
[1] To protect the victim, and the other minors involved, initials will be used where appropriate.
[2] XXXX-XXXX (La.6/14/00), 763 So.2d 608.
[3] See State v. Acliese, 403 So.2d 665 (La. 1981).
[4] Because the conviction is reversed, we pretermit discussion of Mills' second assignment of error.