NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2019 KA 0468

STATE OF LOUISIANA

VERSUS

JORDAN COOKS

DATE OF JUDGMENT:     SEP 2 7 2019

ON APPEAL FROM THE THIRTY SECOND JUDICIAL DISTRICT COURT
NUMBER 757506,  PARISH OF TERREBONNE
STATE OF LOUISIANA

HONORABLE DAVID W. ARCENEAUX, JUDGE

* * * * * *

Joseph L. Waitz, Jr.                        Counsel for Appellee
District Attorney                           State of Louisiana
Amanda L. Mustin
Ellen D. Doskey
Assistant District Attorneys
Houma, Louisiana


Jane Louise Beebe                           Counsel for Defendant - Appellant
New Orleans, Louisiana                      Jordan Cooks

* * * * * *

BEFORE:  MCDONALD, THERIOT, AND CHUTZ, JJ.


Disposition:  CONVICTION, HABITUAL OFFENDER ADJUDICATION, AND SENTENCE
AFFIRMED.

**CHUTZ, J.**

The defendant, Jordan Rhynell Cooks, was charged by bill of information with one count of introducing or possessing contraband in any municipal or parish prison or jail, a violation of La. R.S. 14:402(E). He pled not guilty. Following a jury trial, he was found guilty as charged. The defendant's motions for a new trial and a post-verdict judgment of acquittal were denied. Thereafter, the State filed a habitual offender bill of information.[1] Following a hearing, the defendant was adjudged a fourth or subsequent felony habitual offender and was sentenced to thirty years imprisonment at hard labor without benefit of probation or suspension of sentence. He now appeals, challenging the admission of evidence of his prior conviction of the same type of offense at issue in this case and the denial of his motion to continue. For the following reasons, we affirm the conviction, habitual offender adjudication, and sentence.

## FACTS

On July 24, 2017, Terrebonne Parish Sheriff's Office Corporal Joel Rene Harris entered a control pod[2] at the Terrebonne Parish correctional complex that had a view of the defendant's dormitory. The control room provided a panoramic view of all the surrounding dormitories and a view directly into the clear glass windows of each cell. Corporal Harris observed what appeared to be an inmate cutting another inmate's hair. Inmates were prohibited from having sharp objects,

---

[1] Predicate #1 was set forth as the defendant's June 4, 2010 guilty plea, under Twenty-third Judicial District Court, Parish of Assumption, Docket #09-128, to introduction of contraband into a penal institution. Predicate #2 was set forth as the defendant's October 12, 2011 guilty plea, under Fifth Judicial District Court, Parish of West Carroll, Docket #2011-F-037, to introduction/possession of or sending contraband into/from a penal institution. Predicate #3 was set forth as the defendant's July 7, 2008 guilty plea, under Seventeenth Judicial District Court, Parish of Lafourche, Docket #440,949, to possession of cocaine. Predicate #4 was set forth as the defendant's May 31, 2012 guilty plea, under Fourteenth Judicial District Court, Parish of Calcasieu, Docket #2789-12, to simple robbery.

[2] The jury was informed that a "control pod is a kind of an office area for the correctional officer where they could see all of the dorms."

2

so Corporal Harris asked Lieutenant Nicholas Joseph Daigle to investigate the matter while Corporal Harris kept watch from the control room.

Corporal Harris observed while Lieutenant Daigle entered the dormitory and addressed the issue concerning the sharp object. While Lieutenant Daigle questioned the inmates involved in the hair cutting incident, Corporal Harris saw the defendant throw a white object into a cell.[3] Corporal Harris was unable to immediately alert Lieutenant Daigle to the incident by radio due to poor radio reception, but he subsequently told Lieutenant Daigle where the defendant had thrown the white object. Lieutenant Daigle recovered the object.

Lieutenant Daigle testified that inmates at the Terrebonne Parish correctional complex are prohibited from having telecommunication devices, such as cell phones. On the date of the incident, Lieutenant Daigle entered the defendant's dormitory to investigate a report of inmate Kenny Veal cutting another inmate's hair with something sharp. As Lieutenant Daigle approached Veal, the defendant entered cell 3. Lieutenant Daigle ordered the defendant out of cell 3 and returned his attention to Veal. Lieutenant Daigle heard radio traffic but was unable to understand the message. After confiscating razor blades from Veal, Lieutenant Daigle returned to the control room. Corporal Harris advised Lieutenant Daigle that while his back was turned, the defendant had exited cell 3 and thrown what appeared to be a white sock into cell 402. Lieutenant Daigle immediately returned to the dormitory and entered cell 402, where he recovered a white sock that was in plain view on the floor. The sock contained a black cell phone.

After viewing surveillance video of the incident and talking to Corporal Harris, Lieutenant Daigle advised the defendant of his **Miranda**[4] rights. The

---

[3] Corporal Harris initially testified he saw the defendant throw what appeared to be a "white cell phone" into a cell. Corporal Harris later indicated, however, he saw the defendant throw a white object, but was unable to identify the object and did not see the defendant "touch a phone."

[4] **Miranda v. Arizona**, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

defendant waived those rights and agreed to speak to Lieutenant Daigle. Lieutenant Daigle asked the defendant if he wanted to talk about the contraband found inside the cell. The defendant asked, "What contraband?" After the defendant was advised by Lieutenant Daigle that he had witnessed the defendant on surveillance "ditching an item into a cell that appeared to be a cell phone," the defendant stated, "Well if you got me on camera, you got me." The defendant refused to answer how the cell phone entered the jail, but did answer why he "toss[ed]" the object. He stated he had to take his chances because he knew he would be searched.

In connection with Lieutenant Daigle's testimony, the State played surveillance video of the incident. Lieutenant Daigle identified footage of Veal cutting hair while the defendant sat on a table, dressed in all white. The video showed the defendant entering cell 3 as Lieutenant Daigle came into view. Lieutenant Daigle ordered the defendant out of cell 3, and the defendant exited while Lieutenant Daigle's back was turned. The video then shows the defendant transferring a sock from his left hand to his right hand and throwing the sock into a neighboring cell.

Lieutenant Daigle identified State Exhibit #1 as the black cell phone he recovered from cell 402 on the day of the incident. He placed the cell phone in a bag with the date and time of the incident and his signature.

## EVIDENCE OF OTHER CRIMES

In assignment of error number 1, the defendant contends the trial court erred in granting the State's La. Code Evid. art. 404(B) motion and allowing the introduction of evidence that he had an October 2011 conviction for introduction/possession of or sending contraband (a cell phone) into/from a penal institution (West Carroll Detention Center). The defendant argues the evidence was introduced solely to portray him as a bad character and not to prove a material

4

issue having independent relevance, citing **State v. Calloway**, 2018-1396 (La. App. 1st Cir. 4/12/19), ___ So.3d ___, 2019 WL 1578109.

Generally, evidence of criminal offenses other than the offense being tried is inadmissible as substantive evidence because of the substantial risk of grave prejudice to the defendant. Under Article 404(B)(1), other crimes evidence "is not admissible to prove the character of a person in order to show that he acted in conformity therewith." The evidence may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident. La. Code Evid. art. 404(B)(1). At least one of the enumerated purposes in Article 404(B) must be at issue, have some independent relevance, or be an element of the crime charged in order for the evidence to be admissible under Article 404. To be admissible under Article 404(B), evidence of the defendant's prior bad acts must meet two criteria: (1) it must be relevant to some issue other than the defendant's character; and (2) its probative value must be greater than its potential to unfairly prejudice the jury. See La. Code Evid. arts. 403 & 404(B); **State v. Day**, 2012-1749 (La. App. 1st Cir. 6/7/13), 119 So.3d 810, 813. A trial court's ruling on the admissibility of evidence of other crimes will not be overturned absent an abuse of discretion. **Day**, 119 So.3d at 813.

Any inculpatory evidence is "prejudicial" to a defendant, especially when it is "probative" to a high degree. **State v. Taylor**, 2016-1124 (La. 12/1/16), 217 So.3d 283, 295. As used in the balancing test, "prejudicial" limits the introduction of probative evidence of prior misconduct only when it is unduly and unfairly prejudicial. **Taylor**, 217 So.3d at 295; see also **Old Chief v. United States**, 519 U.S. 172, 180, 117 S.Ct. 644, 650, 136 L.Ed.2d 574 (1997) ("The term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different

5

from proof specific to the offense charged."); **State v. Rose**, 2006-0402 (La. 2/22/07), 949 So.2d 1236, 1244.

Prior to trial, the State provided the defendant with notice of intent to use evidence of his commission of other crimes, wrongs or acts, including his previous conviction for having a cell phone in the West Carroll Detention Center.[5] The defendant opposed the motion and moved for a hearing.

At the hearing, the State argued its motion concerned incidents that took place in penal facilities and involved "the defendant intentionally possessing something he knows he is not allowed to possess." The State argued there was a real and genuine issue of the defendant's general intent to have a contraband object in his possession. The State noted the defendant had subpoenaed Veal to come to court and "take the charge" or claim possession of the contraband cell phone.[6] The State set forth that it intended to use the challenged evidence to prove the defendant's intent to possess contraband items while incarcerated and that his possession of the cell phone was no mistake or accident. The State also argued the challenged evidence was probative of the defendant's knowledge, i.e., "the defendant knows possessing such items is criminal and that he knows how to go about possessing such items anyway." The State claimed the probative value of the challenged evidence outweighed its prejudicial effect.

The defense argued the State's motion was untimely, the challenged evidence was repetitive and cumulative, and the challenged evidence was unnecessary to prove a matter genuinely at issue.

---

[5] The State also gave notice of its intent to use evidence of the defendant's June 4, 2010 guilty plea to possession or introduction of contraband (drugs) into a penal institute and that between March 7, 2018 and April 13, 2018, he conspired to dispense drugs in any municipal or parish prison or jail. The trial court did not allow introduction of these incidents, finding them too dissimilar to be probative of anything other than the defendant's bad character.

[6] At trial, the defense called the defendant's dormitory mate, Kenny Veal, as a witness. (Veal, however, invoked his privilege against self-incrimination and did not testify. See U.S. Const. amend. V; La. Const. art. I, §16.

6

The trial court ruled it would grant the State's motion with regard to the defendant's previous conviction for having a cell phone in the West Carroll Detention Center. The court found the State could use the earlier conviction to help satisfy its burden to prove the identity of the defendant as the person who possessed the cell phone in the instant case. The court noted that in the argument on the motion, it had been suggested that another person could possibly be blamed for possession of the cell phone.

The trial court also found the earlier conviction was admissible to show intent; specifically, that the defendant intended to repeat his behavior. The court noted the charged offense,[7] included the language "attempted to introduce"[8] and that an attempt to commit a crime requires specific intent.[9]

Lastly, the trial court found the earlier conviction was admissible to show absence of mistake or accident because the fact the defendant had been previously convicted of the same conduct now charged "could be used to reinforce the State's position that it was no mistake and was not an accident, that that cell phone was in his possession at the time the incident occurred."

In support of his assertion that the trial court erred in allowing the State to introduce the other crimes evidence at issue, the defendant relies strongly on this court's recent decision in **Calloway**, wherein the majority found reversible error in

---

[7] The bill of information charged that "[i]n violation of La[.] R.S. 14:402.E., Jordan Rhynell Cooks, on or about July 24, 2017, did possess or introduce or attempt to possess or introduce contraband into or upon the premises of any municipal or parish prison or jail."

[8] Louisiana Revised Statutes 14:402(E), in pertinent part, provides:

> It shall be unlawful to possess or to introduce or attempt to introduce into or upon the premises of any municipal or parish prison or jail ... or to give or to attempt to give to an inmate of any municipal or parish prison or jail, any of the following articles which are hereby declared to be contraband ... (7) Any telecommunications equipment or component hardware, including ... cellular phones[.]

[9] See La. R.S. 14:27(A) ("[a]ny person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended[.]").

7

the admission of other crimes evidence. The trial court in **Calloway** found the other crimes evidence admissible to show identity, plan, and intent. **Calloway,** 2019 WL 1578109 at *8. This court, however, pointed out distinguishing facts between the other crimes and the subject offense and found the similarities were not "peculiarly distinctive" and, therefore, did not "constitute distinctive or idiosyncratic marks" so as to be admissible as proof of identity. **Calloway,** 2019 WL 1578109 at *9. This court further found that the other crimes evidence failed to meet the "plan exception," because there was no indication that the prior offenses were committed in preparation for the subject offense or as part of a series of crimes committed in order to achieve an ultimate goal. **Calloway,** 2019 WL 1578109 at *9. Moreover, identity, not intent, was the contested issue at trial. Intent was not a material fact at issue, nor was it raised as a defense. Thus, this court concluded the other crimes evidence was inadmissible to prove intent. **Calloway,** 2019 WL 1578109 at *9. Lastly, we noted, "none of the other examples provided in La. [Code Evid.] art. 404(B)(1), which would allow for the admissibility of other crimes evidence, are applicable to the evidence of the extraneous robberies." **Calloway,** 2019 WL 1578109 at *9.[10]

At trial in the instant case, the State introduced into evidence the bill of information, minutes, plea agreement, and **Boykin**[11] transcript concerning the defendant's October 12, 2011 guilty plea to introduction/possession of or sending contraband into/from a penal institution. The State and the defense stipulated that the defendant was the same Jordan Cooks convicted in that exhibit. The only facts concerning the prior offense that the documents revealed were that the defendant

---

[10] A majority of the panel in **Calloway** went on to conclude that the erroneous admission of the other crimes evidence was not "harmless beyond a reasonable doubt." Thus, the majority reversed the conviction and remanded for a new trial, with one judge dissenting. **Calloway,** 2019 WL 1578109 at *9.

[11] **Boykin v. Alabama,** 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).

admitted that on March 15, 2011, he introduced contraband, specifically, a cell phone, into a penal facility, specifically, the West Carroll Detention Center.

In its closing argument, the State relied on this evidence to argue:

> The defendant is well aware that he is not allowed to have a cell phone in the jail. He has been convicted of having a cell phone in a jail before. This wasn't a mistake or an accident where I didn't know I couldn't have it. This was no accident, no mistake, he intended to have a cell phone again in a jail. He intentionally possessed that phone.

The trial court gave the following limiting jury instruction to the jury:

> You cannot find the defendant guilty of Possession of Contraband in any Municipal or Parish Prison of Jail just because you believe he committed another offense or that he may have committed another crime, or another offense, or another wrongful act at some other place or at some other time. Evidence that the defendant was involved in the commission of another offense other than the offense for which he is on trial may be considered only for limited purposes. The sole purposes for which such evidence may be considered by you in this case is whether the evidence tends to show proof of the defendant's plan or intent or absence of mistake or accident.

The trial court did not abuse its discretion in granting the State's Article 404(B) motion concerning the defendant's October 2011 guilty plea. At least one of the enumerated purposes in Article 404(B) was at issue, had some independent relevance, or was an element of the crime charged. In contrast to **Calloway**, intent was at issue in this case. The defense in this case specifically argued it was reasonable for the jury to conclude the defendant "threw a white object, not that he threw a cell phone." Defense counsel also argued "[i]t is reasonable to doubt whether [the defendant] had the intent to possess a cell phone." Defense counsel concluded "[i]t is important for [the jury] to understand if the defendant did not intend to possess a cell phone because he did not know there was a cell phone, then you can find him not guilty."

If the element of intent is at issue, evidence of similar unrelated conduct is admissible to negate a defense theory that the accused acted without criminal intent and to show that he intended to commit the charged offense. **State v. Kennedy,**

2017-0724 (La. 9/29/17), 227 So.3d 243, 244 (per curiam); see La. Code Evid. art. 404(B). Further, the degree of similarity required to admit evidence of prior criminal conduct for the purpose of showing *intent* is lower than if it is sought to establish the defendant's *identity*. **Kennedy**, 227 So.3d at 244.

The argument of defense counsel, as well as the fact the defendant could not be convicted of the charged crime without proof of his guilty knowledge that he had a contraband cell phone, also placed knowledge and absence of mistake or accident at issue in this case. Guilty knowledge is used to negate an innocent explanation for an undoubtedly *unlawful* act, as possibly done unknowingly. **State v. Silguero**, 608 So.2d 627, 629 (La. 1992). Further, the prejudicial effect to the defendant from the challenged evidence did not rise to the level of undue or unfair prejudice when balanced against the probative value of the evidence.

This assignment of error is without merit.[12]

## CONTINUANCE

In assignment of error number 2, the defendant argues the trial court erred in denying the defense motion to continue made on the morning of trial after the court's ruling on the Article 404(B) motion. He argues the court wrongly denied the defense time to find witnesses and mount a defense to rebut the Article 404(B) evidence.

Following the court's ruling on the Article 404(B) motion, the defense moved for a continuance based on late notice of the Article 404(B) evidence[13] and the trial court ruling that day the evidence would be admitted. The court inquired

---

[12] As previously noted, the trial court also found the State could use the earlier conviction to help satisfy its burden to prove the identity of the defendant as the person who possessed the cell phone in the instant case. However, at trial, neither the State, through argument, nor the trial court, through instruction, invited the jury to consider the earlier conviction for this purpose. Therefore, it is unnecessary to consider the merits of this basis for admission of the earlier conviction.

[13] The notice of intent to use evidence of the defendant's commission of other crimes, wrongs, or acts was filed on June 15, 2018. Trial commenced on June 26, 2018.

10

of the State concerning the substance of the Article 404(B) evidence it intended to introduce into evidence. The State indicated the evidence would consist of the record of the defendant's earlier conviction and the presentation of a fingerprint analyst to compare the fingerprints of the defendant with those on the earlier bill of information.

The court then inquired of the defense concerning witnesses it intended to present. The defense stated it had no witnesses "at this time." The defense indicated, however, it would not have time to meet the State's fingerprint analyst or to subpoena a rebuttal fingerprint witness. The court found insufficient grounds to continue the trial and denied the motion for continuance.

The granting or denial of a motion for continuance rests within the sound discretion of the trial court, and its ruling will not be disturbed on appeal absent a showing of a clear abuse of discretion. **State v. Roberts**, 2012-1555 (La. App. 1st Cir. 4/26/13), 116 So.3d 754, 757, writs denied, 2013-1204, 2013-1215 (La. 12/6/13), 129 So.3d 528; see La. Code Crim. P. art. 712.

In the instant case, there was no clear abuse of discretion in the trial court's denial of the motion to continue. The only "other crimes" evidence introduced at trial was the defendant's 2011 conviction for introduction/possession of or sending contraband into/from a penal institution, which involved a cell phone. The defense acknowledged it could not claim surprise by the late filing as to the prior convictions. Instead, the defense primarily objected to the State's notice to the extent the State intended to also offer evidence concerning a pending criminal case. The potential witnesses to which the defense referred were related to the pending criminal case, but the trial court did not allow evidence of the pending criminal case to be introduced. Counsel for the defendant admitted there were no witnesses she wished to subpoena relative to the defendant's convictions. Lastly, when the State presented its fingerprint expert at trial, the defense objected that a comparison

11

of fingerprints was unnecessary because sufficient identifying information was provided by the presence of the defendant's name and date of birth on the prior court record. The defense then stipulated that the "Jordan Cooks" with the date of birth on the prior court record was the defendant.

This assignment of error is without merit.

**CONVICTION, HABITUAL OFFENDER ADJUDICATION, AND SENTENCE AFFIRMED.**